JUN-26-2003 THU 10:35 AM LONDRIGAN POTTER &RANDLE    FAX NO. 217  449826    P. 2
E-FILED
Friday, 17 September, 2004  08:51:36 AM
Clerk, U.S. District Court, ILCD

## LONDRIGAN, POTTER & RANDLE, P.C.
### ATTORNEYS AT LAW

THOMAS F. LONDRIGAN
JAMES R. POTTER
CRAIG A. RANDLE
ALEXANDRA DE SAINT PHALLE
JOHN P. LEAHY
DENNIS R. ATTEBERRY

1227 SOUTH SEVENTH STREET
POST OFFICE BOX 399
SPRINGFIELD, IL 62705
TELEPHONE: (217) 544-9823
FACSIMILE: (217) 544-9826
WWW.LPRPC.COM
ALEX@CITYSCAPE.NET

TIMOTHY J. LONDRIGAN
- - -
JAMES T. LONDRIGAN (OF COUNSEL)
- - -
JOSEPH A. LONDRIGAN (1919-1970)
JAMES E. LONDRIGAN (1923-1975)

June 26, 2003

VIA FACSIMILE & U.S. MAIL: 312-781-6630 #704

Hope G. Nightingale
Litchfield Cavo
303 W. Madison Street, Su. 2000
Chicago, IL 60606

RE: Insured:          Cree Development Corporation
    Policy #:         CCC 449 25 30
    Policy Period:    12/31/01 thru 12/31/03
    Claimant:         Michael Powell

Dear Ms. Nightingale,

I have been provided with a copy of your fax dated June 18, 2003 which you sent to Henry Mitchell, Cree Development & others. Apparently your letter and mine (see attached) crossed in the mail. However, I will respond to the statements made in your letter.

I must take issue with your contention that the Cincinnati policy does not provide coverage for both defense and indemnity in connection with the Powell suit. While I agree that the Powell complaint does not allege "bodily injury", "property damage" or "advertising injury" as those terms are defined in the Cincinnati policy, I disagree that no coverage is offered under the "personal injury" coverage and under the "Broadened Endorsement" that modifies insurance provided under the Commercial General Liability Coverage Part."

First, with regard to the personal injury coverage, your policy's definition of "personal injury" includes, "discrimination, unless insurance coverage therefor is prohibited by law or statute." The term, "discrimination" includes the act of "making a difference in treatment or favor on a class or categorical basis in disregard of individual merit. *See, Websters 3rd New International Dictionary*, p. 638. Retaliatory discharge

EXHIBIT A

Hope Nightingale letter
June 26, 2003
Page 2 of 4

is a form of discrimination because it singles out a person based on his assertion of certain legal rights rather than based on his individual merit. The Illinois Supreme Court has specifically found that claims alleging retaliatory discharge in violation of the rights protected by the Worker's Compensation Act are covered under comprehensive general liability policies:

> Likewise, the allegation that Hanneken's termination was in retaliation for filing workers' compensation claims cannot be construed to mean actual malice. An essential predicate of a claim for retaliatory discharge is an allegation that the employer's conduct be in retaliation for the employee's activities. The retaliatory nature of the discharge, in this context, does not mean that the discharge was committed with actual malice, but merely that the discharge was causally related to the filing of the workers' compensation claim. (See *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill.2d 526, 529, 116 Ill.Dec. 694, 519 N.E.2d 909.) Since the allegations in the amended complaint cannot be construed to mean actual malice, they do not fall beyond the scope of the policy's coverage.
>
> *Dixon Distr. Co. v. Hanover Insurance Co.*, 161 Ill.2d 433, 441, 204 Ill.Dec. 171, 175 (1994).

In this case, there is no material difference between allegations of retaliatory discharge for assertions of right under the Worker's Compensation Act and retaliatory discharge for assertions of right under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1.

With regard to your other specific contentions, I agree that the Powell suit can be divided into three sets of counts. I further agree that your policy would not cover indemnity of any liability resulting from the stock sale claims. However, I do believe that Cincinnati owes a defense on the stock sale claims because Illinois law requires that if there is any count of a complaint which might be covered under the insurance policy, then the insurer must provide a defense as to all counts. See, *Bedoyav v. Ill. Founders Ins. Co.*, 293 Ill.App. 3d 668, 228 Ill.Dec. 59 (1st Dist. 1997), quoted in my earlier letter.

Hope Nightingale letter
June 26, 2003
Page 3 of 4

With regard to the retaliatory discharge and Wage Act claims, I disagree that there is no coverage or indemnity under those counts under the "Employee Benefit Liability Coverage". Both the allegations made in the retaliatory discharge counts and the Wage Act counts arise out of a claimed error or omission in the administration of the insured's "Employee Benefit Programs." You first contend that the complaint does not allege "negligent acts, errors or omissions." However, the complaint clearly alleges errors or omissions in the handling of Cree's vacation plan and its profit sharing agreement with Powell. Specifically, Powell's complaint alleges, among other things, that he was entitled to 82 days of accrued vacation days which under his interpretation of the Cree vacation plan accrued from "year to year", and that Cree failed to pay the vacation benefits required under the Wage Act and that he was fired in retaliation for his assertions of these rights. Clearly, these claims arise out of a claimed "error" in Cree's interpretation of its vacation plan.

Your policy language specifically covers <u>interpretation</u> of employee benefit programs – *See* the definition of "Administration" on page 5 of your letter. And your policy specifically covers "vacation plans" under its definition of "Employee Benefit Programs". *See* page 6 of your letter. Therefore, allegations of Powell's complaint arise under the "administration" portions of the policy.

That this dispute in interpretation qualifies as an error or omission under the 1A.(1)(a) policy language is confirmed by review of the policy exclusions. Specifically, if Cincinnati had intended for its coverage to apply only to negligent errors and negligent omissions, then there would be no need for it to have an exclusion exempting "acts, errors or omissions of any insured that are dishonest, fraudulent, criminal or malicious" because by definition, negligence does not include dishonesty, fraud, criminal or malicious conduct. It is well settled that insurance policies are read as a whole and a court must give each term in the policy meaning unless to do so would render the clause or policy inconsistent or inherently contradictory. ***State Farm Fire & Casualty v. Martin***, 186 Ill.2d 367, 238 Ill.Dec. 126 (1999). Here, if your interpretation of the policy was correct, then the entire exclusion for dishonesty and fraud would be mere surplusage. Also, if there are two inconsistent or conflicting clauses, the clause which affords the greater insurance will govern. ***Sentry Ins. v. Hogan***, 111 Ill.App.3d 638, 67 Ill.Dec. 525 (1st Dist. 1982).

Finally, the Wage Payment & Collection Act is not a law similar to the Worker's Compensation, Disability, Social Security and Unemployment Insurance statutes. The latter statutes all deal with state mandated insurance programs or programs for disabled

Hope Nightingale letter
June 26, 2003
Page 4 of 4

workers. The Wage Payment Act is a very specific statute which goes only to mandate payment of wages and vacation benefits and bonuses which are a part of an employee's private contract with his employer. It does not deal with mandatory insurance or with disability benefits as do all of the other statutes listed. Under the liberal interpretation that is afforded to insurance policies in favor of the insured, the Wage Payment Act cannot be deemed a law similar to the Social Security and Worker's Compensation laws.

For these reasons, and for those stated in my earlier letter, I believe that Cree Development and its officers do have coverage under the Cincinnati policy. Consequently, I have advised Henry Mitchell not to sign your waiver of coverage.

If you have any questions, please feel free to call me.

Thank you.

Yours truly,

ALEXANDRA de SAINT PHALLE

ASP/amk
Enclosure

## LONDRIGAN, POTTER & RANDLE, P.C.
### ATTORNEYS AT LAW

THOMAS F. LONDRIGAN
JAMES R. POTTER
CRAIG A. RANDLE
ALEXANDRA DE SAINT PHALLE
JOHN P. LEAHY
DENNIS R. ATTEBERRY

1227 SOUTH SEVENTH STREET
POST OFFICE BOX 399
SPRINGFIELD, IL 62705
TELEPHONE: (217) 544-9823
FACSIMILE: (217) 544-9826
WWW.LPRPC.COM
ALEX@CITYSCAPE.NET

TIMOTHY J. LONDRIGAN
- - -
JAMES T. LONDRIGAN (OF COUNSEL)
- - -
JOSEPH A. LONDRIGAN (1919-1970)
JAMES E. LONDRIGAN (1923-1975)

June 16, 2003

Hope G. Nightingale
Litchfield Cavo
303 W. Madison Street, Su. 2000
Chicago, IL 60606

RE:   Insured:          Cree Development Corporation
      Policy #:         CCC 449 25 30
      Policy Period:    12/31/01 thru 12/31/03
      Claimant:         Michael Powell

Dear Ms. Nightingale,

Henry Mitchell, CEO of Cree Development Corp. has asked me to write to you regarding his claim that The Cincinnati Insurance Company owes Cree and its officers a duty to defend and indemnify them under the lawsuit entitled Michael D. Powell v. Henry Mitchell/Cree Development, et al., No. 03-L-142, filed in St. Clair County, Illinois. Cree purchased employee benefit liability coverage with Cincinnati Insurance. Under that coverage, Cincinnati is obligated to provide Cree with a defense for claims arising out of the "administration of the insured's 'Employee Benefit Programs'". The definition of "administration" includes "effecting enrollment, termination or cancellation of employees under the 'Employee Benefits Programs'". Employee Benefit Programs include (b) profit sharing plans ... and (d) vacation plans.... The only exclusions under the policy are for:

    (c)    Acts, errors or omission of any insured that are dishonest, fraudulent, criminal or malicious.

\*\*\*

    (h)    Failure of the insured to comply with any law concerning workers' compensation, unemployment

Hope Nightingale letter
June 16, 2003
Page 2 of 3

insurance, social security, disability benefits or any similar law.

Cincinnati Commercial Insurance Policy # 074-10-40, Insured: Cree Development Corp., 12/31/01 to 12/31/03.

Counts V through IX of Mr. Powell's complaint all allege retaliatory discharge against Henry Mitchell, Cree Development Corp., and other Cree officers due to Michael Powell's request for vacation pay which Powell claims is in violation of the clearly mandated public policy of the State of Illinois requiring payment of earned compensation... See e.g.: paragraph 14, Count V of the Complaint. This conduct does not fit the definition of "acts, errors or omissions" which are "dishonest, fraudulent, criminal or malicious." In fact, there is not even a right of recovery under Illinois law for retaliatory discharge involving the Wage Payment Act. See, *McGrath v. CCC Information Services*, 314 Ill.App.3d 431, 246 Ill.Dec. 856 (1st Dist. 2000).

Counts X through XIII of the Complaint allege a failure to pay bonuses and vacation pay allegedly required by the Illinois Wage Payment and Collection Act, 820 ILCS 115/1. This statute is not one of the specifically enumerated statutes under paragraph (h) quoted above. Moreover, even if it were, the Complaint merely seeks those damages under its policy. Cincinnati has a duty to defend any suit seeking those damages, notwithstanding the fact that there is an exclusion for indemnifying the insured for "the failure of the insured to comply with any law regarding worker's compensation." It is well known that the duty to defend under a policy of insurance is far broader than the right to indemnify. *LaGrange Memorial Hosp. v. St. Paul Ins. Co.*, 317 Ill.App.3d 863, 251 Ill.Dec. 191 (1st Dist. 2000).

Cincinnati's duty to defend exists despite the fact that the first three counts of the Complaint allege breach of contract to sell stock. Under Illinois law, an insurer owes a duty to provide a defense as to all claims even if only one claim is potentially covered under the policy.

Illinois courts have consistently held that "[t]he duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the

Hope Nightingale letter
June 16, 2003
Page 2 of 3

others may not be." *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 194, 355 N.E.2d 24 (1976). [FN4]

*Bedoya v. Illinois Founders Ins. Co.*, 293 Ill.App.3d 668, 674, 228 Ill.Dec. 59, 63 (1st Dist. 1997).

In addition, Illinois law requires an insurer to provide a defense "if the allegations in the underlying complaint fall within *or even potentially within* the policy's coverage. *LeGrange v. Memorial Hospital*, 317 Ill.App.3d 863, 251 Ill.Dec. 199 (1st Dist. 2000)(emphasis is within the original), "The threshold that a complaint must satisfy to present a claim of potential coverage is low." at Ill.App.3d 869. If the insurance company does not defend under a reservation of rights or by bringing a prompt declaratory judgment action, it acts at its peril – it may then be found to have breached its duty to defend and no longer entitled to assert policy defenses based on non-coverage.

We believe that these principles clearly provide that Cincinnati has a duty to provide a defense in the *Powell v. Cree* lawsuit. On Cree's behalf, I request that you begin providing Cree and its officers with the defense to which they are entitled under their policy with Cincinnati.

Yours truly,

ALEXANDRA de SAINT PHALLE

ASP/amk

# LITCHFIELD CAVO
Attorneys at Law

WRITER'S ADDRESS:
303 West Madison Street
Suite 300
Chicago, Illinois 60606-3309
(312) 781-6604
(312) 781-6630 Fax

Daniel P. Johnston
Email: johnston@litchfieldcavo.com

August 3, 2004

Ms. Alexandra de Saint Phalle
Londrigan Potter & Randle, PC
1227 S. Seventh Street
P.O. Box 399
Springfield, Illinois 62705

Re: *Cincinnati Insurance Company v. Cree Development Corporation, et al.*

Dear Ms. de Saint Phalle:

We received your clients' Supplemental Answers to Cincinnati Insurance Company's Interrogatories. You had agreed to answer Interrogatories 9-12 without objection. With respect to your answers of Interrogatories 10-12 we note that you have simply answered "see letter dated June 23, 2003". While we believe we understand your position with respect to these answers, please be advised that we will seek all judicial remedies available to Cincinnati if indeed the Cree defendants raise and/or argue other issues or arguments that are not reflected in the June 23, 2003 letter.

If you have any further questions please do not hesitate to contact our offices.

Very truly yours,

LITCHFIELD CAVO

Daniel P. Johnston

DPJ:klb

cc: Hope Nightingale

EXHIBIT B

| ILLINOIS | CONNECTICUT | WISCONSIN | NEW JERSEY | MASSACHUSETTS | NEW YORK |
|---|---|---|---|---|---|
| 303 W. Madison St. Suite 300 Chicago, IL 60606 (312) 781-6677 (312) 781-6630 Fax | 40 Tower Lane Suite 200 Avon, CT 06001 (860) 255-5577 (860) 255-5566 Fax | 13555 Bishop's Court Suite 230 Brookfield, WI 53005-6224 (262) 784-8800 (262) 784-8812 Fax | 222 Haddon Avenue, Suite 2B Westmont, NJ 08108 (K. Collins, Man. Atty.) 856-854-3636 856-869-9515 Fax | 6 Kimball Lane Suite 100 Lynnfield, MA 01940 (781) 309-1500 (781) 246-0167 Fax | 420 Lexington Avenue Suite 400 New York, NY 10170 (212) 434-0100 (212) 434-0105 Fax |

3:03-cv-03166-JES-BGC   # 28-2   Page 9 of 17

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 19640

Page 1 of 6

Service: Get by LEXSEE®
Citation: 1992 U.S. Dist. LEXIS 19640

1992 U.S. Dist. LEXIS 19640, *

**ALLSTATE FINANCIAL CORPORATION Virginia Corporation, Plaintiff, v. UTILITY TRAILER OF ILLINOIS, INC. and Illinois Corporation, and JERRY RHODES, Defendants.**

No. 92 C 3477, Hon. Paul E. Plunkett

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1992 U.S. Dist. LEXIS 19640

December 22, 1992, Decided
December 23, 1992, Docketed

**DISPOSITION:** [*1] Defendants Utility and Rhodes' Motion to Dismiss Count III of the Plaintiff Allstate's Amended Complaint is denied. Defendants are ordered to answer Count III of the Amended Complaint.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff, business that factored accounts receivable, filed suit against defendants, a manufacturer and its president, alleging among other things that defendants and a third-party concocted a scheme to defraud plaintiff by artificially inflating the third-party's accounts receivable that were subject to a written factoring agreement with plaintiff. Defendants filed a motion to dismiss the fraud claim pursuant to Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** Plaintiff and the third-party entered into a written factoring agreement whereby the third-party agreed to sell open accounts receivable to plaintiff. Plaintiff's fraud count alleged that the manufacturer fictitiously requested transportation services from the third-party so as to artificially inflate the third-party's accounts receivable in order to induce plaintiff to advance the third-party funds. Plaintiff purchased those accounts receivable and paid the third-party, but the manufacturer and the president refused to pay plaintiff on the debt. The court dismissed the fraud count in plaintiff's original complaint for failure to plead with particularity. The manufacturer and its president again filed a motion to dismiss plaintiff's amended fraud claim for failure to plead with particularity. In denying the motion to dismiss, the court ruled that the amended fraud count averred fraud and conspiracy with sufficient particularity to meet the requirements of Illinois law and Fed. R. Civ. P. 9(b) by alleging that a knowing misstatement of material fact was made with the intent that plaintiff rely on it, that plaintiff did reasonably do so, and that plaintiff was damaged thereby.

**OUTCOME:** The court denied defendants' motion to dismiss plaintiff's claim for fraud and ordered defendants to answer that count of plaintiff's complaint.

**CORE TERMS:** accounts receivable, conspiracy, plead, fictitious, breach of contract, conspired, confirmed, invoices, lading, conspiracy to defraud, personally liable, particularity, personally, motion to dismiss, artificially, factoring, defraud, inflate, induce, phony, owed

LexisNexis(R) Headnotes ♦ Hide Headnotes


EXHIBIT C

3:03-cv-03166-JES-BGC    # 28-2    Page 10 of 17    Page 2 of 6

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 19640

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss

HN1± On a motion to dismiss, the court views the allegations of the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. Plaintiff's complaint should not be dismissed unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief. Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements
Torts > Business & Employment Torts > Deceit & Fraud

HN2± Under Illinois law and Fed. R. Civ. P. 9(b), a count for fraud alleges as much as is required when it alleges that a knowing misstatement of material fact was made with the intent that the plaintiff rely on it, that plaintiff did reasonably do so, and that plaintiff was damaged thereby. More Like This Headnote

Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities
Torts > Business & Employment Torts > Deceit & Fraud

HN3± The general rule, that an officer of corporation cannot be held personally liable for the wrongs of the corporation, does not free a corporate officer from liability for his own actions: he may be held personally liable for the acts or debts of the corporation where the officer actively participated in the underlying wrongdoing. The mere fact that a person is an officer does not render him liable for the fraud of the corporation. He is liable only if he with knowledge, or recklessly without it, participates or assists in the fraud. More Like This Headnote

**JUDGES:** PLUNKETT

**OPINIONBY:** PAUL E. PLUNKETT

**OPINION: MEMORANDUM OPINION AND ORDER**

This matter is before this Court on the Defendants' Motion to Dismiss Count III of Allstate's Amended Complaint. For the reasons stated below, the motion is denied.

**Facts**

Plaintiff Allstate is in the business of factoring accounts receivable. (Am. Compl. P 1.) n1 Utility manufactures and services refrigerated semi-trailer trucks. (Id. P 2.) Rhodes is the chief executive officer of Utility, president of both of Utility's parent corporations, Kintla Enterprises and Pinnacle Enterprises, and has served as president of RW Service Systems, Inc. ("RW"). (Id. PP 3-4.) RW was an interstate motor carrier which is now defunct, and its principals cannot be found. (Id. P 3.)

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 On a motion to dismiss, the court views the allegations of the complaint as true. Thus, the facts recited herein are gleaned from Allstate's Amended Complaint.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*2]

In August of 1991, Allstate entered into a written factoring agreement with RW. Pursuant to

3:03-cv-03166-JES-BGC   # 28-2   Page 11 of 17

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 19640                    Page 3 of 6

this agreement and in consideration for a certain sums of cash, RW agreed to sell open accounts receivable to Allstate. The agreement contained a warranty by RW that the accounts receivable were, in fact, due and owing for services provided by RW and that they were not subject to contingent obligations, set off or counterclaim. (Id. P 5.)

According to the Complaint, Utility, Rhodes, and RW concocted a scheme to defraud Allstate. Utility contacted RW on several occasions between December 9, 1991 and January 7, 1992, and requested transportation services from RW worth a total of $ 477,100.00. (Id. P 6.) Allstate asserts that these service orders were fictitious and that Rhodes, Utility, and RW intended the phony orders to artificially inflate RW's accounts receivable in order to induce Allstate to advance RW funds. (Id. P 12.) RW created invoices and bills of lading for the phony orders and presented them to Allstate. (Id. P 13; Pl.'s Ex. D.)

In reliance upon these representations, Allstate purchased the accounts receivable on these services between December 12, 1991 [*3] and January 7, 1992, paying RW a total of $ 381,680.00. (Id. PP 6, 14.) When Allstate inquired about the debt, Rhodes confirmed that Utility owed $ 477,100.00. (Id. P 15.) Allstate demanded payment from Utility, but payment has been refused. (Id. PP 7-9.)

Allstate filed the original Complaint against Utility and Rhodes in May 1992. The four-count Complaint alleged breach of contract, account stated, conspiracy to defraud, and estoppel. The Defendants moved to dismiss the Complaint pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure. As to the original Count III, which alleged fraud, the Defendants argued fraud was not plead with adequate particularity as required by the Federal Rules, and that conspiracy was not plead as required by Illinois law. Abell v. First Nat'l Bank in Shawneetown, 506 N.E.2d 684, 686 (Ill. App.), appeal denied, 515 N.E.2d 100 (Ill. 1987). We agreed and dismissed Count III without prejudice. Allstate Fin. Corp. v. Utility Trailer of Illinois, 1992 WL 245525 (N.D. Ill. 1992)

An Amended Complaint was filed with this Court on October 5, 1992. Defendants Utility [*4] and Jerry Rhodes again moved to dismiss Count III of Allstate's Amended Complaint, alleging that it fails to correct the deficiencies of its forebear.

**Discussion**

HN1 On a motion to dismiss, the court views the allegations of the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. Powe v. City of Chicago, 664 F.2d 639, 642 (7th Cir. 1981). Plaintiff's complaint should not be dismissed "unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief. . . . Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." Ellsworth v. City of Racine, 774 F.2d 182, 184 (7th Cir. 1985), cert. denied, 475 U.S. 1047 (1986) (citations omitted).

**I. The Sufficiency of the Fraud and Conspiracy Count**

The amended Count III restates the allegation of its progenitor in that it alleges that Rhodes and Utility conspired to defraud Allstate by artificially inflating Utility's accounts receivable. [*5] (Am. Compl. PP 10-19.) Though the new count provides little more detail than the original, it does plead enough to succeed in stating the essential elements of a conspiracy to defraud. It alleges that the Defendants knowingly placed orders with RW for services that Utility did not need, want, or intend to pay for in order to inflate RW's accounts receivables and induce Allstate to advance RW funds. RW reduced these orders to fictitious invoices and bills of lading totaling $ 477,000.00 and presented them to Allstate. (Pl.'s Ex. D.) Allstate agreed to purchase the accounts in reliance upon the fictitious orders. Rhodes then confirmed to Allstate that Utility did indeed owe RW the $ 477,100.00 on January 24, 1992.

3:03-cv-03166-JES-BGC  # 28-2  Page 12 of 17

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 19640

Page 4 of 6

We feel that amended Count III avers fraud and conspiracy n2 with sufficient particularity to meet the requirements of HN2 Illinois law and Rule 9(b). It alleges as much as is required: that a knowing misstatement of material fact was made with the intent that the Plaintiff rely n3 on it, that Allstate did reasonably do so, and that Allstate was damaged thereby. Murphy v. Walters, 410 N.E.2d 107, 111 (Ill. App. 1980); Sears v. Likens, 912 F.2d 889 (7th Cir. 1990) [*6] (who, when, and how of the fraudulent occurrence must be plead under 9(b)).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Rhodes is alleged to be an officer of both Utility and RW. Defendants argue that no conspiracy could have existed as a matter of law between Rhodes and Utility and/or RW, because a corporation cannot enter into a conspiracy with its own agents. See Friendship Medical Ctr. v. Space Rentals, 62 F.R.D. 106 (N.D. Ill. 1974). However, there are two corporations involved here, and Rhodes, in his capacity as an agent of one, could have conspired with the other.

n3 Defendants assert that they made no statements to Allstate prior to January 24, and therefore Allstate could not have relied on anything they said or did in purchasing the accounts receivable in December. We reject this contention. Allstate purchased the accounts on the basis of invoices and bills of lading that reflected the fictitious orders made by Utility and Rhodes. (See Pl.'s Ex. D.)

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

II. Rhode's Personal Liability

Defendants [*7] also renew their argument that Jerry Rhodes, as an officer of Utility, cannot be held personally liable for the wrongs of the corporation. Defendants correctly state the general rule. Main Bank of Chicago v. Baker, 427 N.E.2d 94, 101 (Ill. 1981); Goldstein v. Scott, 439 N.E.2d 1039 (Ill. App. 1982). This rule is not changed merely because the officer was the person the aggrieved party dealt with in his transactions with the corporation. Gowdy v. Richter, 314 N.E.2d 549, 560 (Ill. App. 1974). However, HN3 this rule does not free a corporate officer from liability for his own actions: he may be held personally liable for the acts or debts of the corporation where the officer actively participated in the underlying wrongdoing. n4 As the court in Citizens Savings & Loan Association v. Fischer, 214 N.E.2d 612 (Ill. App. 1966), stated: "The mere fact that a person is an officer . . . does not render him liable for the fraud of the corporation. . . . He is liable only if he with knowledge, or recklessly without it, participates or assists in the fraud." Id. at 615-16 [*8] (citations omitted); see also Gidwitz v. Stirco, 646 F. Supp. 825, 830 (N.D. Ill. 1986) (citing cases); McIntosh v. Magna Sys., 539 F. Supp. 1185, 1193 (N.D. Ill. 1982) (claim for interference with contractual relations upon showing that individual defendant induced other parties' breach of contract); Murphy v. Walters, 410 N.E.2d 107, 110 (Ill. App. 1980) (claim for fraud upon showing that individual defendant made knowingly false statements); Fure v. Sherman Hosp., 371 N.E.2d 143, 144 (Ill. App. 1977) (claim in tort upon showing that individual defendant participated in tortious acts); Polivka v. Worth Dairy, 328 N.E. 2d 350, 354 (Ill. App. 1975) (claim for breach of contract upon showing that individual defendant contracted in his own behalf).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 We note that Allstate did not avail itself of this argument in support of its original

3:03-cv-03166-JES-BGC   # 28-2   Page 13 of 17

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 19640

Page 5 of 6

Complaint's claims against Rhodes individually.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*9]

The Plaintiff has alleged that Rhodes personally conspired with RW and Utility to defraud Allstate, and that Rhodes personally confirmed to Allstate the Utility owed RW nearly one half of a million dollars. At this early stage of the proceeding, no more is required.

## Conclusion

Defendants Utility and Rhodes' Motion to Dismiss Count III of the Plaintiff Allstate's Amended Complaint is denied. n5 Defendants are ordered to answer Count III of the Amended Complaint.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 Though no 12(e) motion was filed by the Defendants, Allstate filed a document entitled "More Definite Statement" on November 6, purportedly pursuant to Rule 12(e). This is a misunderstanding of the narrow purpose and proper use of Rule 12(e), which is intended as a vehicle for a responding party to seek more information about the claims against him when the complaint is too vague to allow him to formulate an answer. See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1376 at 573. There is no precedent for a plaintiff, on its own initiative, to file a "More Definite Statement" under Rule 12(e). The document Allstate has filed can only be characterized as an attempt to amend the Amended Complaint. Because an answer was filed by the Defendants on October 19, Allstate may not amend its Complaint without leave of this Court. Fed. R. Civ. P. 15(a). We have not granted Allstate leave to amend their Amended Complaint. This document is stricken.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - [*10]

ENTER:

PAUL E. PLUNKETT

UNITED STATES DISTRICT JUDGE

DATED: December 22, 1992

Service: Get by LEXSEE®
Citation: 1992 U.S. Dist. LEXIS 19640
View: Full
Date/Time: Thursday, September 9, 2004 - 7:26 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

* Click on any Shepard's signal to Shepardize® that case.

9/9/2004

3:03-cv-03166-JES-BGC   # 28-2   Page 14 of 17

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 15314

Page 1 of 5

Service: Get by LEXSEE®
Citation: 2003 U.S. Dist. LEXIS 15314

2003 U.S. Dist. LEXIS 15314, *

ACORDIA NORTHEAST, INC., Plaintiff, -against- THESSEUS INTERNATIONAL ASSET FUND NV, INC., ADRIATIC INSRUANCE GROUP LTD., BARRY FEINER and DEREK GALANIS Defendants.

01 Civ. 5398 (RLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 15314

September 2, 2003, Decided
September 4, 2003, Filed

**PRIOR HISTORY:** Accordia Northeast, Inc. v. Thesseus Int'l Asset Fund, N.V., Inc., 205 F. Supp. 2d 176, 2002 U.S. Dist. LEXIS 9357 (S.D.N.Y., 2002)

**DISPOSITION:** [*1] Summary judgment granted to defendants on plaintiff's breach of contract claim.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff, an automobile insurance program administrator, and defendants, a corporation and its president, filed motions for summary judgment in the administrator's action for breach of contract.

**OVERVIEW:** Pursuant to a contract with a third party, the administrator was responsible for remitting premiums from an automobile insurance program to the third party. The administrator then contracted with the corporation and its wholly owned subsidiary to have the latter administer the program. The subsidiary commingled some of the premiums with its operating account to pay business expenses, which triggered the administrator's liability to the third party. The administrator alleged that the corporation breached an indemnification agreement pursuant to which the corporation agreed to indemnify the administrator for liabilities resulting from "any negligent act, error or omission" by the corporation and the subsidiary arising from the insurance program. The administrator argued that the word "negligent" only modified the word "act" such that the corporation was liable for the deliberate omission of failing to remit the premiums owed. However, the court held that the word "negligent" unambiguously modified "act," "error," and "omission" because it would have been self-defeating to limit coverage for intentional acts, while at the same time covering intentional errors and omissions.

**OUTCOME:** The court granted the motion for summary judgment filed by the corporation and its president.

**CORE TERMS:** omission, premium, negligent act, modify, collected, breach of contract, summary judgment, policy language, ambiguous, drafter, wholly owned subsidiary, remitting, remit

EXHIBIT D

LexisNexis(R) Headnotes ♦ Hide Headnotes

9/10/2004

3:03-cv-03166-JES-BGC    # 28-2    Page 15 of 17                               Page 2 of 5

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 15314

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules
Contracts Law > Contract Conditions & Provisions > Indemnity

HN1± In the context of insurance policies, "negligent act, error or omission" means "negligent act, negligent error, or negligent omission." It would be self-defeating for the insurers who draft these contracts to limit coverage for intentional acts, while at the same time covering intentional errors and omissions. More Like This Headnote

**COUNSEL:** PAUL R. MCMENAMIN, Of Counsel, PAUL R. MCMENAMIN, New York, New York, for Plaintiff.

JOHN J. PHELAN, III, Of Counsel, JOHN J. PHELAN, III, P.C., New York, NY, for Thesseus and Feiner, Defendants.

**JUDGES:** ROBERT L. CARTER, U.S.D.J.

**OPINIONBY:** ROBERT L. CARTER

**OPINION:** ROBERT L. CARTER, District Judge

Plaintiff Acordia Northeast, Inc. ("Acordia") brought suit against Thesseus International Asset Fund, NV, Inc. ("Thesseus") and Thesseus's President, Barry Feiner, n1 alleging breach of contract. Now before the court are plaintiff's and defendants' motions for summary judgment, pursuant to Rule 56, F.R. Civ. P.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Plaintiff contends that Feiner is personally liable for the acts of Thesseus and its wholly owned subsidiary, Adriatic Insurance Group, Ltd., under the alter-ego doctrine.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**BACKGROUND**

Acordia sues to recover insurance premiums allegedly owed pursuant to an Indemnification Agreement with Thesseus. The Indemnification Agreement [*2] was one of several contracts in a broader enterprise to offer automobile insurance in Kosovo.

On March 3, 2000, Acordia entered into a contract with a third party, AIU North America, Inc. and the Insurance Company of Pennsylvania (collectively, "AIU"). The contract made Acordia the Program Administrator of the parties' auto insurance endeavor. Within this role, Acordia was responsible for remitting all auto insurance premiums to AIU. (Kenny Aff. Ex. 2.)

Acordia, in turn, contracted with Thesseus and its wholly owned subsidiary, Adriatic Insurance Group, Ltd. ("Adriatic"), to have the latter administer the operations of the insurance program in the territory of Kosovo. Adriatic's responsibilities under this Sub-Producer Agreement with Acordia included accounting for and remitting premiums it collected directly to AIU. (Id. at Ex. 9.) AIU approved of this arrangement in a letter agreement dated March 31, 2000. (Id. at Ex. 10.)

In or about April 2001, representatives of Acordia discovered that Adriatic was not turning over to AIU all of the premiums it collected, and was instead commingling some of the money

3:03-cv-03166-JES-BGC   # 28-2   Page 16 of 17

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 15314

Page 3 of 5

with its operating account and using it to pay day-to-day business [*3] expenses. (Id. at Ex. 18.) These actions clearly violated Thesseus's duties to Acordia and AIU under the Sub-Producer Agreement. (Id. at Ex. 9.) It also triggered Acordia's liability to AIU under the Program Administrator Agreement for the withheld premiums. To date, Acordia has paid $ 250,000 of the $ 478,531 debt owed to AIU under the Program Administrator Agreement. (Id. at Ex. 5; Pl.'s Mem. at 2.)

Acordia claims that, despite numerous demands, Thesseus has failed to pay the premium monies it owes, either to AIU or Acordia, in breach of an Indemnification Agreement drafted by Acordia and entered by Thesseus. n2 This agreement limits Acordia's responsibility for Thesseus's and Adriatic's actions as administrators in Kosovo. The agreement states, in relevant part:

> [Thesseus and Adriatic] agree[] to indemnify and hold harmless the Program Administrator ... from and against any and all liabilities ..., expenses (including reasonable attorney's fees) ... arising out of or resulting from, in whole or in part; (i) any negligent act, error or omission by [Thesseus and Adriatic] ... relating to or arising out of the business covered by the Program Administrator [*4] Agreement ...

(Kenny Aff. Ex. 1.)

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Plaintiff makes clear that this agreement is the sole basis for its claim of breach.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

It is clear that Thesseus's undisputed failure to remit all of the premiums Adriatic collected is "relating to or arising out of" the business covered by the Program Administrator Agreement. What is less clear is whether Thesseus's failure to pay constitutes a "negligent act, error or omission" such that the Indemnification Agreement has been breached.

Significantly, Acordia does not allege that Thesseus's act, error or omission was negligent. It claims the opposite. Rather, Acordia urges the court to interpret the clause "negligent act, error or omission," so that the word "negligent" only modifies the word "act" and does not modify "error" or "omission." Under this interpretation, Thesseus would be liable for its allegedly deliberate omission, namely, the failure to remit premiums. Defendants claim that the word "negligent" modifies all three of the nouns that follow it.

Insurance [*5] policies that provide coverage for negligent acts, errors or omissions are quite common. This court has assumed, without deciding, that the clause applies only to negligent behavior. See Jacobson v. Fed. Ins. Co., 1999 U.S. Dist. LEXIS 15992, 95 Civ. 4343, 1999 WL 893045, at *3 (S.D.N.Y. Oct. 15, 1999) (Knapp, J.).

Courts in other jurisdictions that have explicitly addressed the issue HN1 have almost uniformly held that "negligent act, error or omission" means "negligent act, negligent error, or negligent omission." These courts reasoned that it would be self-defeating for the insurers who draft these contracts to limit coverage for intentional acts, while at the same time covering intentional errors and omissions. See, e.g., Employers Reinsurance Corp. v. Teague, 972 F.2d 339 (4th Cir. 1992); U.S. Fid. & Guar. Co. v. Fireman's Fund Ins. Co., 896 F.2d

3:03-cv-03166-JES-BGC   # 28-2   Page 17 of 17

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 15314    Page 4 of 5

200, 203 (6th Cir. 1990); Group Voyagers, Inc. v. Emplrs. Ins. of Wausau, 2002 U.S. Dist. LEXIS 3674, C 01-0400, 2002 WL 356653 (N.D.Cal. March 4, 2002); TIG Ins. Co. v. Joe Rizza Lincoln-Mercury, Inc., 2002 U.S. Dist. LEXIS 4175, 00 C 5182, 2002 WL 406982, at *9 (N.D.Ill. March 14, 2002); City of Dillingham v. CH2M Hill N.W., Inc., 873 P.2d 1271, 1275 (Alaska 1994); [*6] Golf Course Superintendents Ass'n v. Underwriters at Lloyd's, London, 761 F. Supp. 1485, 1490 (D. Kan. 1991). Cf. Connecticut Indem. Co. v. DER Travel Serv., Inc., 328 F.3d 347 (7th Cir. 2003) (assuming that the clause applies only to negligence). But see **Employer's Reinsurance Co. v. Mut. Med. Plans, Inc., 504 N.W.2d 885 (Iowa 1993)** (holding that "negligent" does not modify "error" or "omission"); Aitchison v. Founders Ins. Co., 166 Cal. App. 2d 432, 333 P.2d 178 (Cal. Ct. App. 1958) (assuming that the policy language covered "errors" without addressing the issue of whether the errors need be negligent).

The court is inclined to adopt the majority view that the adjective "negligent" unambiguously modifies "act," "error," and "omission" for the reason stated above. n3 Accordingly, summary judgment is granted to defendants on Acordia's breach of contract claim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 It should be noted that even if the language in question were ambiguous (an argument not advanced by either party), as the sophisticated drafter of the Agreement, Acordia would be the one to suffer the consequence of the ambiguity. See USM Corp. v. First State Ins. Co., 420 Mass. 865, 652 N.E.2d 613, 614-15 (Mass. 1995) (holding identical policy language to be ambiguous and construing the policy against the drafter).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*7]

## CONCLUSION

Summary judgment is granted to defendants. The clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: September 2, 2003

**ROBERT L. CARTER**

U.S.D.J.

Service: Get by LEXSEE®
Citation: 2003 U.S. Dist. LEXIS 15314
View: Full
Date/Time: Friday, September 10, 2004 - 3:04 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize*® that case.