IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>CREE DEVELOPMENT CORPORATION, INC., a Delaware corporation, HENRY MITCHELL, an individual, WANDA MITCHELL, an Individual, RONALD D. LANCE, an individual, JOYCE LANCE, an individual and MICHAEL D. POWELL, an individual,<br><br>Defendants. | Case No. 03-CV-3166<br><br>Judge Jeanne Scott |

**CINCINNATI INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO <u>MOTION FOR SUMMARY JUDGMENT FILED BY CREE DEFENDANTS</u>**

Plaintiff, Cincinnati Insurance Company ("Cincinnati"), by its attorneys, submits the following Reply Memorandum in support of its Motion for Summary Judgment, and in opposition to the request for summary judgment as filed by the Cree Defendants.[1]

Cincinnati's Motion should be granted. Cree's convoluted new argument for coverage for the three "Director Defendants" is barred by the "mend the hold" doctrine. Even if the Court entertains their argument, the coverage theory cannot withstand legal scrutiny. Cree suffers a similar fate with respect to its claims that Cree Development and

---

[1] While the Cree Defendants call their brief a "Cross Motion for Summary Judgment," they did not file any such motion. Moreover, the Cree Brief/Motion was not filed within the deadline established by this Court for filing dispositive motions. As a result, the Cree Defendants should not be allowed to file any further legal memoranda on these issues.

Henry Mitchell are entitled to coverage. Cree cannot establish that the claims asserted in the underlying Powell Lawsuit fall within the grant of coverage in the Cincinnati policies. As a result, Cincinnati has no duty to defend the Cree Defendants in the Powell case and summary judgment should be entered in Cincinnati's favor.

## NO FACT DISPUTES

All parties agree that this insurance coverage dispute involves only questions of law, and not of fact. The Cree Defendants (singly or in combination) either are entitled to insurance coverage for the Powell Suit as a matter of law, or they are not.

The Cree Defendants disagree with Paragraphs 4 and 5 of the Material Facts Claimed to Be Undisputed, as set forth in Cincinnati's opening Memorandum in Support of its Motion for Summary Judgment ("Cincinnati Brief"). Cincinnati's Brief asserted that the allegations against each of the Cree Defendants in the Retaliatory Discharge claims (Counts V-IX) and the Wage Act claims (Counts X-XIV) were "identically worded." The Cree Defendants state that the allegations are not "identical." (Cree Brief at 3). In fact, the Cree Brief focuses on this variation in the pleadings to support its claim for coverage.

Cincinnati either had not noticed those differences in the underlying allegations or, even if it had, did not consider them material to this case. The Cree Defendants never before pointed out to Cincinnati any variations in the underlying pleading. Notwithstanding Cincinnati's apparent misstatement, the precise wording of the Powell complaint is not in dispute. As a result, no material fact issue precludes summary judgment in this case.

I.     **ARGUMENT**

A.     <u>THERE IS NO COVERAGE UNDER CGL PORTION OF POLICY.</u>

The Cree Defendants originally asserted that there was coverage for the Powell

Complaint under the "personal injury" section of the CGL policy. As Cincinnati explained in its opening Brief, the claims in the Powell Lawsuit are not covered under "personal injury" or any other portion of the CGL policy. The Cree Brief contains no discussion of the CGL coverage part. The Cree Defendants therefore have abandoned or waived any argument for coverage under the CGL portion of the Policy.

B.   NO INDEPENDENT COVERAGE FOR STOCK SALE CLAIMS

The Cree Defendants concede that the Cincinnati policies provide no independent coverage for the Stock Sale claims, and that Cincinnati will have no duty to indemnify any defendant for any such liability. Their sole argument for coverage of the Stock Sale claims is their theory that other claims in the Powell Complaint are covered. Cincinnati agrees that, if it must provide a defense to any one defendant for a claim in the Powell Complaint, then Cincinnati would have a duty to defend that defendant against all counts of the Powell Complaint – including the Stock Sale claims.

C.   NO COVERAGE FOR THE RETALIATORY DISCHARGE CLAIMS BECAUSE THEY DID NOT ARISE FROM THE "ADMINISTRATION" OF ANY EMPLOYEE BENEFITS PROGRAM AT CREE DEVELOPMENT.

The Cree Brief claims that Cincinnati has "implicitly acknowledged" that the claims for Retaliatory Discharge come within the coverage grant of the Employee Benefit Endorsement. (Cree Brief at 8). Cincinnati did no such thing. The Employee Benefit Endorsement provides coverage only for damages arising from the "administration" of Cree's "Employee Benefits program." "Administration" is specifically defined as counseling employees; interpreting Employee Benefits programs; handling of records for Employee Benefits programs; or effecting enrollment, termination or cancellation of employees under the Employee benefits programs. (Endorsement, Exhibit F to Cincinnati's Brief). The

Retaliatory Discharge claims assert that the Cree Defendants wrongfully terminated Powell's employment with the company. Firing an employee does not constitute "administration" of any Employee Benefit Program. As a result, the Retaliatory Discharge claims do not fall within the grant of coverage under the Endorsement.

D. THE DIRECTOR DEFENDANTS' NEW ARGUMENT FOR COVERAGE BASED ON POTENTIAL NEGLIGENCE IS BARRED BY "MEND THE HOLD."

The primary argument for coverage in the Cree Brief is convoluted and based on several layers of bootstrapping. The steppingstones of this theory of coverage can be summarized as follows.

1. It is unclear whether the claims asserted in the Powell Complaint against Wanda Mitchell, Ronald Lance and Joyce Lance (the "Director Defendants") are based on a theory of negligence.

2. If the claims against the Director Defendants are possibly based on negligence, then the Court must assume – for purposes of insurance coverage – that those claims are, in fact, negligence-based.

3. A claim against the Director Defendants that is based on negligence is potentially covered under the Employee Benefit coverage Endorsement.

4. If there is potential coverage for the negligence claim, Cincinnati must provide a defense to that claim.

5. If Cincinnati must defend any one count, it must defend all of them.

6. Finally, the Cree Defendants appear to argue that insurance coverage for any one of the Cree Defendants means that Cincinnati must provide coverage for all of them – even if the allegations against them are not identical.

(Cree Brief at 6-9).

This argument – including all of its corollaries – is new. Cree never before relied on, much less revealed to Cincinnati, this theory of coverage. Prior to filing this lawsuit,

Cincinnati explained to Cree its rationale for declining coverage. Cincinnati invited Cree to respond with any reason why Cincinnati should reconsider its coverage assessment. In response, Cree sent a letter dated June 26, 2003 (the "June 26 letter") (attached hereto as Exhibit A),[2] explaining its theory of why coverage should be provided. The June 26 letter does not reveal or rely on this "potential-negligence-means-potential-coverage" theory.

In this litigation, Cincinnati sent formal discovery requests to the Cree Defendants to verify their theory of coverage. The Cree Defendants responded by referring Cincinnati to the June 26 letter. (Cree's Amended Supplemental Answers to Cincinnati's Interrogatories) (attached to Cincinnati's Brief as Exhibit B). After receipt of these discovery responses, Cincinnati explicitly warned Cree that it would use all appropriate methods to prevent any attempt by the Cree Defendants to rely on theories of coverage that had not been revealed to Cincinnati. (See letter dated August 3, 2004) (attached as Exhibit B). Cree provided no additional coverage rationales until filing its Brief.

The Cree Defendants should be estopped from arguing coverage based on this new potential-negligence-means-potential-coverage theory, pursuant to the "mend the hold" doctrine. Under Illinois law, the "mend the hold" doctrine limits the rights of parties to contract disputes to change their position throughout the litigation. E.g., Houben v. Telular Corp., 309 F.3d 1028, 1036 (7th Cir. 2002); Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 362-65 (7th Cir. 1990); Smith v. Union Auto. Indemnity Co., 323 Ill.App.3d 741, 752 N.E.2d 1261, 1264 (2d Dist. 2001) (party may not change position once litigation has begun).

Cincinnati gave Cree several chances – both before the litigation and during it – to

---

[2] The Cree Defendants sometimes erroneously refer to this June 26, 2003 letter as a June 23, 2003 letter.

provide its theory of coverage to Cincinnati. This "potential negligence" theory was never revealed to Cincinnati. Under the "mend the hold" doctrine, the Cree Defendants should be estopped from relying on this new argument to dispute Cincinnati's coverage position.

E.  THE DIRECTOR DEFENDANTS' ARGUMENT FOR COVERAGE BASED ON "POTENTIAL NEGLIGENCE" IS SIMPLY WRONG.

Even if the Court entertains Cree's new argument for coverage for the Director Defendants,[3] it should reject it because the theory is not supportable under Illinois law.

The Cree Brief concedes that the Powell Complaint does not clearly assert a negligence theory of liability against the Director Defendants. (Cree Brief at 7-8). However, Cree claims that the possibility of negligence cannot be foreclosed. Cree then asserts that because liability *might* be based on negligence, the Court should find coverage under the Employee Benefit Endorsement. (Id.). This theory of coverage is logically and factually flawed.

Cree relies on Stamp v. Touche Ross, 263 Ill.App.3d 1010, 636 N.E.2d 616 (1st Dist. 1993) to show that the Directors Defendants could be held liable to Powell for negligence. (Cree Brief at 7). Their reliance on Stamp for this purpose is totally misplaced. Stamp involved a fiduciary duty claim by (or on behalf of) the company against its own directors. It was not a claim for torts allegedly committed by the company against a third party. The theories of director liability discussed in Stamp do not apply to Powell's tort claim.

---

[3] Cree makes this coverage argument **only** as to the three Director Defendants, not as to Cree Development or Henry Mitchell. (Cree Brief at 6-7). Cincinnati admits that if it owes a defense to any one insured, it must defend all counts asserted against that insured. However, Cree cannot "piggyback" coverage from one insured to another. Even if Cincinnati were obliged to provide coverage for the three Director Defendants, Cincinnati would not necessarily have to provide coverage for Cree Development or Henry Mitchell, against whom the allegations are not identical. We know of no case that would require such a result, and none is cited in the Cree Brief. National Union, cited in Cree Brief at 8, does not involve multiple insureds and would not require such carryover.

According to Cree, the Director Defendants could be held liable to Powell based on their inattentiveness to the management of the company, or their failure as Directors or Officers to make informed decisions. In such case, they could be held liable for any wrongdoing of the company. (Cree Brief at 7).

But the Powell Complaint does not allege any negligence by the Director Defendants, nor can it be interpreted to assert negligence against them. It does not allege that the Director Defendants failed to "make informed judgments or use due care in arriving at those judgments, facts which are essential for the plaintiff to recover for negligence." Stamp, 263 Ill.App.3d at 1017, 636 N.E.2d at 622. There is no allegation that the Director Defendants were "inattentive" to the management of Cree Development. There is no allegation that they breached any duty that they owed to Powell. The Powell Complaint lacks any of these "essential" allegations that could support the "potential negligence" theory of coverage asserted by the Cree Defendants.

It would be improper for the Court to redraft the Powell Complaint by supplying allegations that were not made by the underlying plaintiff. As stated in Connecticut Indemnity Company v. Der Travel Service, Inc., 328 F.3d 347, 350-351 (7th Cir. 2003), "it is the actual complaint, not some hypothetical version, that must be considered" in a coverage analysis. Yet the Cree defendants ask this Court to do so in order to manufacture insurance coverage for their benefit. Because the Powell Complaint does not allege negligence by the Director Defendants, they have no coverage under the Employee Benefit endorsement.

F.  **THE DIRECTOR DEFENDANTS CANNOT BE HELD VICARIOUSLY LIABLE FOR WRONGFUL ACTS OF THE CORPORATION UNLESS THEY WERE PERSONALLY INVOLVED IN THOSE ACTS.**

Cree's "potential negligence" theory of coverage has another flaw: the negligence theory on which they rely would not be actionable under Illinois law. A director of a corporation is insulated from personal liability for the tortious acts of the corporation and its employees, unless that director personally participated in those tortious acts or contributed to the injuries suffered by the plaintiff. Illinois Jurisprudence, Business Relationships, § 7:64 (2003), citing Fure v. Sherman Hospital, 55 Ill.App.3d 572, 371 N.E.2d 143 (1st Dist. 1977) (shareholder-owner cannot be held vicariously liable for acts by other employees of corporation, where shareholder-owner did not participate in the allegedly wrongful conduct); Allstate Financial Corp. v. Utility Trailer of Illinois, 1992 U.S.Dist. LEXIS 19640 *7 (N.D. Ill. 1992) (copy attached as Exhibit C) (corporate officer cannot be held personally liable for the wrongs of the corporation, but only for his own actions; he can be liable for the fraud of the corporation "only if he with knowledge, or recklessly without it, participates or assists in the fraud") (citing cases).

According to the Cree Defendants, the Powell Complaint does *not* allege that the Director Defendants personally participated in the wrongful conduct. (Cree Brief at 6). Absent such allegations, Powell would have no claim against the Director Defendants for negligently managing the business of the corporation. Therefore, contrary to the argument in the Cree Brief, negligence *can* be ruled out as a potential basis for liability and coverage for the Director Defendants. This provides yet another reason why the Court should reject the "potential negligence" theory of coverage.

### The Powell Complaint Does Imply Personal Conduct by the Director Defendants.

The Director Defendants could be held liable to Powell for their own bad faith, fraud, illegality or conflict of interest. (Cree Brief at 7-8, citing <u>Stamp</u>, 263 Ill.App.3d at 1016, 636 N.E.2d at 621). The Cree Brief erroneously implies that only Cree Development itself, along with defendant Henry Mitchell, allegedly were involved in the wrongful conduct. For example, the Cree Brief asserts that the Powell Complaint does not "allege that [the Director Defendants] did anything wrong." (Cree Brief at 6). The Cree Brief further asserts that the "Powell Complaint does not allege that the [Director Defendants] engaged in any willful and wanton and intentional conduct." (Cree Brief at 9).

The Cree Defendants are whitewashing their alleged role here. Alternatively, they have confused their defense on the merits of the Powell case with their arguments for insurance coverage. The Powell Complaint **does** allege that the Director Defendants were involved in the actions regarding Powell. In each count against the Director Defendants, the Powell Complaint asks the Court to impose "compensatory and punitive damages in an amount appropriate ***to punish defendant for his willful, wanton and knowing conduct***." *Ad damnum*, Counts VII and XII (Ronald Lance), Counts VIII and XIII (Joyce Lance), and Counts IX and XIV (Wanda Mitchell) (emphasis added). These allegations can be read in only one logical way: they allege willful, wanton and knowing conduct by each of the Director Defendants. In contrast, the counts against Cree Development request damages to punish the corporation for "***its*** willful, wanton and knowing conduct." *Ad damnum*, Counts VI and XI (emphasis added). This distinction between "its" (when addressing Cree Development) and "his" (when addressing the Director Defendants) casts further doubt on the coverage argument of the Cree Defendants.

G. **CREE DEVELOPMENT AND HENRY MITCHELL HAVE NO COVERAGE BECAUSE THE ENDORSEMENT REQUIRES NEGLIGENCE.**

The Employee Benefits Endorsement grants coverage only for "any negligent act, error or omission of the insured." (Endorsement, attached as Exhibit F to Cincinnati's Brief). The Cree Defendants contend that the phrase "negligent act, error or omission" is ambiguous and can be construed as providing coverage to any error or omission even if such error or omission were **not** "negligent." (Cree Brief at 10-12). On this premise, they ask the Court to find coverage for the "errors or omissions" committed by Cree Development and Henry Mitchell – whose conduct was specifically alleged to be knowing and intentional, and clearly beyond any mere negligence.

Not surprisingly, Cree provides no applicable caselaw to support this strained argument. It cites only an Iowa case which held that the word "negligent" should modify only the word "act" and not "error or omission." (Cree Brief at 11). That Iowa decision is contrary to Illinois law. As Cree admits, courts applying Illinois law have consistently interpreted the phrase "negligent act, error or omission" to require negligence for any "error or omission" as well as for any "act." (Cree Brief at 11). Further, the Iowa case is inconsistent with the majority of jurisdictions across the country that have addressed this argument.

> Courts in other jurisdictions that have explicitly addressed the issue have almost uniformly held that "negligent act, error or omission" means "negligent act, negligent error, or negligent omission." These courts reasoned that it would be self-defeating for the insurers who draft these contracts to limit coverage for intentional acts, while at the same time covering intentional errors and omissions. [Numerous case citations omitted] ...The court is inclined to adopt the majority view that the adjective "negligent" unambiguously modifies "act," "error" and "omission" for the reason stated above.

Acordia Northeast v. Thesseus International Asset Fund, 2003 U.S. Dist. LEXIS 15314 at *5-6 (S.D.N.Y. 2003) (copy attached as Exhibit D). Cree provides no reason why Illinois should part from its own prior rulings, and join the distinct minority of jurisdictions, to adopt this strained reading of a commonly used phrase.

This limitation on coverage to claims for negligence is bolstered by the policy exclusion that specifically precludes coverage for "acts, errors or omissions of any insured that are dishonest, fraudulent, criminal or malicious." (Employee Benefit Endorsement, attached as Exhibit F to Cincinnati's Brief). The exclusion clarifies any ambiguity or uncertainty about whether the Endorsement intends to provide coverage for intentionally harmful conduct.

The Cree Defendants argue that the exclusion is unnecessary if the coverage grant means what it says. (Cree Brief at 11-12). This argument has two flaws. First, it fails to respond to the exclusion itself. The exclusion bars coverage for dishonest, fraudulent, criminal or malicious conduct. The Cree Defendants do not even try to explain how they can avoid the effect of the exclusion in this case.[4] The exclusion bars coverage because the alleged conduct of the Cree Defendants – particularly Cree Development and Henry Mitchell – was malicious.

Second, the grant of coverage and the exclusion are not inconsistent or conflicting in any way; there is no "ambiguity." The intent of the exclusion is entirely consistent with the explicit limitation in the grant of coverage. The two provisions complement each other. To find coverage for Cree Development and Henry Mitchell, the Court would have to ignore

---

[4] Cree Defendants make no response to Cincinnati's argument that any claims falling within the grant of coverage in the Endorsement are otherwise excluded by the exclusion for malicious (etc.) acts. Thus, Cree has waived any argument that the exclusion does not apply.

the word "negligent" (which appears *twice* within the coverage grant) as well as the entire "malicious acts" exclusion. This would violate basic rules of policy interpretation. As stated by Cree, "insurance policies should be read as a whole and a court must give each term in the policy meaning." (Cree Brief at 12, citing cases).

Finally, the Powell Complaint does not allege an "error" or an "omission" with respect to the Retaliatory Discharge or Wage Act claims. There was no mistake here. Powell alleged that the Cree Defendants acted intentionally and knowingly, pursuant to an established pattern and practice of similar decisions. This degree of intent is inconsistent with the concept of an "error" or an "omission." The Cree Defendants have not shown that the claims against them in the Powell Lawsuit fall within the grant of coverage provided by the Employee Benefit endorsement.

H.  CREE DEVELOPMENT AND HENRY MITCHELL HAVE NO COVERAGE FOR THE RETALIATORY DISCHARGE OR WAGE PAYMENT ACT CLAIMS.

The Cree Defendants unsuccessfully attempt to avoid the precedent of Connecticut Indemnity Co. v. Der Travel Service, 328 F.3d 347 (7th Cir. 2003) (discussed in Cincinnati's Brief at 15-18).

First, they assert that Connecticut Indemnity does not govern coverage for the Retaliatory Discharge claims because there is no cause of action for retaliation for claims made pursuant to the Wage Payment Act. (Cree Brief at 9). This argument may help them in their defense against the Powell Complaint. It does *not* establish insurance coverage for those claims nor does it help distinguish Connecticut Indemnity.

Second, they assert that Connecticut Indemnity is inapplicable because it involved allegations of fraud, while the Powell Lawsuit involves claims of mere negligence. (*See*

Cree Brief at 10: "unlike the claims at issue in Connecticut, Powell's claims can comprehend negligence conduct under Illinois law"). This is inaccurate. Connecticut Indemnity involved alleged violations of the Illinois Consumer Fraud Act, which can be violated by negligent conduct as well as by purposefully harmful conduct. As a result, this distinction is not helpful.

Moreover, what Cree desperately wants is coverage for Cree Development and Henry Mitchell – the two defendants with the clearest allegations of intentional wrongdoing. Cree asserts that Powell's allegations of "willful and wanton" and "reckless disregard" are "consistent with negligence under Illinois law." (Cree Brief at 9). This is a gross misrepresentation of the Powell Complaint. The Powell Complaint goes further than that. It also alleges that Cree Development and Henry Mitchell (a) knew their actions were in violation of public policy, (b) disregarded that policy, (c) terminated Powell willfully and wantonly, in reckless disregard for his rights and well-being, (d) and that this conduct was part of a practice and pattern of denying employees their rightfully owed wages. (Powell Complaint, Counts V-VI) (Retaliatory Discharge claims). These are not claims of negligence, but of intentionally wrongful conduct. This level of involvement goes far beyond other cases relied on by Cree (Cree Brief at 10), such as the alleged "failure to discover the danger" (Ziarko) or "recklessly disregarding the truth" (TIG Insurance).

The Cree Defendants also rely on Dixon Distributing v. Hanover Insurance, 181 Ill.2d 433, 641 N.E.2d 395 (1994). (Cree Brief at 4-5 and 10). The issue in Dixon was whether to impute "actual malice" into the allegations of the underlying complaint, which did not contain such allegations. Dixon is irrelevant because there is no need to impute any such language in this case. The Retaliatory Discharge claims in the Powell Complaint

clearly allege that the Cree Defendants acted knowingly, willful and wantonly, in disregard of Powell's rights and pursuant to a pattern and practice of conduct toward Cree's employees. These allegations are sufficient to take this claim outside the scope of coverage – without the need for any implication by the Court. Thus, Dixon has no bearing on this case.[5]

## CONCLUSION

For the foregoing reasons, the Cree Defendants – either singly or collectively – have failed to establish that they are entitled to coverage for the Powell Suit. Cincinnati respectfully requests entry of summary judgment in its favor.

Respectfully submitted,

CINCINNATI INSURANCE COMPANY

By: s/Hope G. Nightingale
Hope G. Nightingale (06184864)
Daniel P. Johnston (6243197)
Attorneys for The Cincinnati Insurance Company
303 West Madison Street, Suite 300
Chicago, Illinois 60606
Phone:   (312) 781-6614 (Nightingale)
Phone:   (312) 781-6604 (Johnston)
Fax:     (312) 781-6630
email: nightingale@litchfieldcavo.com
email: johnston@litchfieldcavo.com

---

[5] Moreover, Dixon involved coverage under different policy language (whether there was an "occurrence" under an umbrella policy) that is not at issue here. Dixon does not control coverage for the Powell Lawsuit.