**E-FILED**
Tuesday, 16 November, 2004  08:55:35 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, an Ohio corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  03-3166 |
| CREE DEVELOPMENT CORPORATION, INC., a Delaware corporation, HENRY MITCHELL, an individual, WANDA MITCHELL, an individual, RONALD D. LANCE, an individual, JOYCE LANCE, an individual, and MICHAEL D. POWELL, an individual, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>ORDER</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on the parties' cross-motions for summary judgment.  Plaintiff Cincinnati Insurance Company (Cincinnati) filed this declaratory judgment action on July 11, 2003, seeking a declaration that insurance policies issued by Cincinnati to Cree Development Corporation (Cree) did not require Cincinnati to defend or indemnify Cree or its directors Henry Mitchell, Wanda Mitchell, Ronald D.

1

Lance, and Joyce Lance in connection with a lawsuit filed by Michael D. Powell.   Michael Powell was voluntarily dismissed from this action on October 2, 2003.  Cincinnati filed a Motion for Summary Judgment (d/e 24) on August 18, 2004.  The remaining Defendants, Cree, Henry Mitchell, Wanda Mitchell, Ronald Lance, and Joyce Lance (Defendants), filed a Reply to Cincinnati Insurance Company's Motion for Summary Judgment and Cross Motion for Summary Judgment (d/e 27) on September 7, 2004.  For the reasons set forth below, judgment is entered in favor of Cincinnati.

<u>STATEMENT OF FACTS</u>

Cree is a Delaware corporation with its principal place of business in Illinois.  Henry Mitchell, Wanda Mitchell, Ronald Lance, and Joyce Lance are residents of Illinois and, at all relevant times, served as directors of Cree.[1]  Cincinnati is an Ohio corporation with its principal place of business in Ohio.  From December 31, 2001 to December 31, 2002, Cincinnati issued both a commercial general liability insurance policy (CGL policy) and an umbrella liability insurance policy (Umbrella policy) to Cree.

On March 18, 2003, Michael Powell, who had been formerly employed as Cree's general manager, filed suit against Cree, Henry Mitchell,

---

[1]Ronald Lance is now deceased.

Wanda Mitchell, Ronald Lance, and Joyce Lance in the Circuit Court for St. Clair County, Illinois (Powell lawsuit). Powell's fourteen-count Complaint (Powell Complaint), Case No. 03 L 142, alleges three types of claims – breach of agreement to sell stock, retaliatory discharge, and violations of the Illinois Wage Payment and Collection Act (Wage Act), 820 ILCS 115/1 <u>et seq</u>.

The Stock Sale Counts of Powell's Complaint (Counts I - IV) allege claims against Henry Mitchell, Ronald Lance, and Cree arising out of a stock purchase and sale agreement. The Retaliatory Discharge Counts (Counts V - IX) allege claims against each of the Defendants. The factual basis for each of the Retaliatory Discharge Counts is identical. Powell alleges that he was employed by Cree from 1991 until September 5, 2002, during which time he accrued approximately 97 unused vacation days in accordance with Cree's policies and practices. Powell asserts that on September 3, 2002, Powell approached Cree Board Chairman Henry Mitchell and requested that Cree pay him for 82 of the accrued vacation days in lieu of time off. Powell alleges that Henry Mitchell approved his request that same day and Cree's comptroller prepared a check payable to Powell in the amount of $25,231.40 as payment for the 82 days. According

3

to Powell, the comptroller gave the check to Henry Mitchell, but as of the filing of Powell's Complaint, Powell had yet to receive the check or any payment for these 82 accrued vacation days.[2]  Powell contends that on September 5, 2002, he was terminated from his employment by Henry Mitchell, despite his satisfactory job performance.  Powell claims he was terminated in retaliation for his request to convert a portion of his accrued vacation time into a cash payment, in violation of public policy as set out in the Wage Act.  Powell contends this action was a part of a pattern of Cree denying employees rightfully owed wages.

While the Retaliatory Discharge Counts (Counts V - IX) share a common factual basis, the counts are not identical.  In Count V, Powell seeks damages from Henry Mitchell and alleges Henry Mitchell "terminated plaintiff willfully and wantonly, in reckless disregard to plaintiff's rights and well-being." Memorandum in Support of Cincinnati Insurance Company's Motion for Summary Judgment (d/e 25) (Plaintiff's Memorandum) Exhibit A, Powell Complaint, Count V ¶ 15.  Count VI seeks damages from Cree, asserting Cree "terminated plaintiff willfully and wantonly, in reckless

---

[2]Other counts of the Powell Complaint state that following his termination Powell was eventually paid for 15 vacation days.

disregard to plaintiff's rights and well-being."  <u>Id</u>., Exhibit A, <u>Powell Complaint</u>, Count VI ¶ 15.  Counts VII through IX seek damages from Ronald Lance, Joyce Lance, and Wanda Mitchell, respectively.  None of these counts allege specific conduct by the Lances or Wanda Mitchell; they assert only that Cree "terminated plaintiff willfully and wantonly, in reckless disregard to plaintiff's rights and well-being."  <u>Id</u>., Exhibit A, <u>Powell Complaint</u>, Count VII ¶ 15, Count VIII ¶ 15, Count IX ¶ 15.

Counts X through XIV (the Wage Act Counts) allege claims arising out of alleged violations of § 115/5 of the Wage Act against each of the Defendants.  Under the Wage Act:

> Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. . . . [W]henever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation . . . .

820 ILCS 115/5.  "Final compensation" is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the

5

employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2.

The Wage Act Counts (Counts X - XIV) are identical in all pertinent parts. According to the Powell Complaint, in addition to his regular salary, Powell was entitled to a yearly bonus of 10% of the pre-tax earnings of Cree and some of its subsidiaries. This arrangement was set out in a document entitled "Wage Agreement," which was signed by Powell and Henry Mitchell as Cree's Chairman of the Board. Plaintiff's Memorandum, Exhibit A, Powell Complaint, Exhibit B, Wage Agreement. Under the Wage Agreement, Powell's yearly bonus was to be paid on or before March 15 of the year following that in which the bonus was earned. The Powell Complaint asserts Cree failed and refused to pay Powell any bonus money for the year 2002. The Wage Act Counts further allege that Powell had accrued 97 unused vacation days as of September 3, 2002, and that on September 3, 2002, Powell requested Cree pay him for 82 of these days in lieu of time off. According to the Powell Complaint, Powell was terminated shortly after his request without being paid for the unused vacation.

Powell asserts that, following his termination, on December 2, 2002, he made a written request to Cree for payment for his unused vacation days.

6

According to the Powell Complaint, in response to Powell's request, Cree paid him for 15 vacation days. Each Wage Act Count alleges that Cree "willfully and wantonly withheld [Powell]'s earned vacation days and bonuses, in reckless disregard to [Powell]'s rights and well-being." Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count X ¶ 18, Count XI ¶ 18, Count XIII ¶ 18, Count XIV ¶ 18; Exhibit to Memorandum in Support of Motion (d/e 35), Powell Complaint, Count XII ¶ 18.

Defendants tendered their defense in the Powell lawsuit to Cincinnati, and Cincinnati denied coverage by letter dated June 18, 2003. Cincinnati filed this declaratory judgment action on July 11, 2003. Following discovery, Cincinnati filed a Motion for Summary Judgment on August 18, 2004. Defendants' filed a Response to Cincinnati's Motion for Summary Judgment and a Cross-Motion for Summary Judgment on September 7, 2004.[3] Cincinnati filed a Reply Memorandum in Support of its Motion for

---

[3]Cincinnati asserts Defendants have not filed a motion for summary judgment. Under Local Rule 7.1(D), a motion for summary judgment need not be filed separately from the memorandum of law in support of summary judgment. However, Defendants' Cross-Motion for Summary Judgment was filed nearly three weeks after the August 18, 2004, deadline for dispositive motions in this case. While Cincinnati directs the Court's attention to this fact, it does not request that the Motion be stricken. Cincinnati Insurance Company's Reply Memorandum in Support of its Motion for Summary Judgment and in Opposition to Motion for Summary Judgment filed by Cree Defendants (d/e 29) p.1 n.1; Cincinnati Insurance Company's Opposition to the Cree Defendants' Motion to File a Reply or Sur-Reply (d/e 34) p. 1. Rather, Cincinnati addressed the

Summary Judgment and in Opposition to Motion for Summary Judgment filed by Cree on September 17, 2004.  By Text Order dated September 28, 2004, this Court granted both parties leave to file sur-replies, which they have done.   See Defendants' Combined Surreply Memorandum in Opposition to Cincinnati's Motion for Summary Judgment and Reply to Cincinnati's Opposition to Cree's Motion for Summary Judgment (d/e 32); Cincinnati Insurance Company's Opposition to the Cree Defendants' Motion to File a Reply or Sur-Reply (d/e 34).  The matter is now ripe for decision.

ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must consider the evidence in the light most favorable to the party opposing summary judgment and draw all

Motion on its merits.  The issues have been fully briefed by the parties.  Additionally, the parties agree no issue of material fact remains.  See Joint Letter of Parties dated September 22, 2004 (d/e 30) p. 1.  Under these circumstances, this Court could grant summary judgment in favor of Defendants sua sponte, and the Court will consider Defendants' Cross-Motion.  See Jones v. Union Pacific R. Co., 302 F.3d 735, 740 (7th Cir. 2002).

reasonable inferences in its favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

Illinois law governs this case.  <u>See</u> <u>Cincinnati Ins. Co. v. Dawes Rigging & Crane Rental</u>, 321 F.Supp.2d 975 (C.D.Ill. 2004).  Under Illinois law, the interpretation of an insurance policy is a question of law that may be resolved summarily.  <u>See</u> <u>Connecticut Indem. Co. v. DER Travel Serv., Inc.</u>, 328 F.3d 347, 349 (7th Cir. 2003) (citing <u>Crum & Forster Managers Corp. v. Resolution Trust Corp.</u>, 620 N.E.2d 1073, 1077 (1993)).  The question of whether a duty to defend exists is resolved by comparing the allegations of the underlying complaint to the provisions of the insurance policy.  <u>Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.</u>, 655 N.E.2d 842, 847 (Ill. 1995).  "If the facts alleged in the underlying complaint fall within or even potentially within policy coverage, the insurer has a duty to defend its insured against the complaint."  <u>Id</u>.

> The underlying complaints and the insurance policies must be liberally construed in favor of the insured.  Where a policy provision is clear and unambiguous, its language must be taken in its plain, ordinary and popular sense.  A provision is ambiguous if it is subject to more than one reasonable interpretation.  All doubts and ambiguities must be resolved in favor of the insured.

<u>U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.</u>, 578 N.E.2d 926, 930

(Ill. 1991) (internal quotations and citations omitted).  Additionally, it is well-established that "once the duty to defend is found to exist with respect to one or some of the theories of recovery advanced in the underlying litigation, the insurer must defend the insured with regard to the remaining theories of recovery as well."  National Union Fire Ins. Co. of Pittsburgh, Pa. v. Glenview, 632 N.E.2d 1039, 1042-43 (Ill. 1994).

Cincinnati concedes Henry Mitchell, Wanda Mitchell, Ronald Lance, and Joyce Lance qualify as insureds under the policies with respect to their duties as Cree's officers and directors.  Plaintiff's Memorandum ¶ 22. Defendants assert coverage exists under the Employee Benefit Liability Coverage portion of the policies.  The CGL policy contains a broadened endorsement for Employee Benefit Liability Coverage which provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages caused by any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the "administration" of the insured's "Employee Benefit Programs".  This insurance applies only to negligent acts, errors or omissions which occur during the policy period and take place in the "coverage territory".  We will have the right and duty to defend any "suit" seeking those damages.

Plaintiff's Memorandum, Exhibit F, p. 1 at ¶ I.A.1.a.  The Employee Benefit Liability endorsement expressly excludes claims arising out of "[a]cts, errors

10

or omission of any insured that are dishonest, fraudulent, criminal or malicious." Id. at ¶ I.A.2.c. The Umbrella policy also contains an Employee Benefit Liability endorsement, which provides coverage for damages in excess of the underlying insurance that result from "any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the administration of the insured's employee benefit programs." Id., Exhibit D, p. 25.

## A. Scope of Insurance Coverage

The Court turns first to the parties' dispute about the provisions of the insurance policies. Cincinnati asserts the Employee Benefit Liability endorsements provide coverage only for damages caused by acts, errors, or omissions that are negligent. Defendants, citing Employers Reinsurance Corp. v. Mutual Medical Plans, Inc., contend the word "negligent" as used in the endorsements should be read to modify only "act," not "error or omission." See Employers Reinsurance Corp., 504 N.W.2d 885, 888 (Iowa 1993). Defendants argue that the language is ambiguous and, therefore, should be construed in their favor.

This argument is unavailing. As the Court noted in TIG Ins. Co. v. Joe Rizza Lincoln-Mercury, Inc., "[i]t would be illogical for an endorsement

11

to limit coverage to negligent acts, but to provide coverage for intentional omissions or errors." <u>TIG Ins.</u>, 2002 WL 406982 at *9 (N.D.Ill. Mar. 14, 2002) (applying Illinois law).  Courts applying Illinois law have excluded coverage for intentional conduct under policies providing coverage for "negligent acts, error or omissions."  <u>See</u> <u>id</u>. (collecting cases).  In a declaratory judgment action applying Illinois law, the Seventh Circuit, considering identical language, noted in <u>dicta</u>, "[t]he terms of the policy clearly limit coverage to only negligent acts, errors, or omissions." <u>DER Travel Serv., Inc.</u>, 328 F.3d at 348-49.  There is no reason to believe the Illinois Supreme Court would join the distinct minority of courts to adopt Defendants' proposed interpretation.  <u>See</u> <u>Acordia Northeast, Inc. v. Thesseus Intern. Asset Fund NV</u>, 2003 WL 22057003 (S.D.N.Y. Sept. 4, 2003) (collecting cases).

The Court finds that the adjective "negligent" unambiguously modifies "act," "error," and "omission."  Therefore, the terms of the policy limit coverage to negligent acts, negligent errors, or negligent omissions. Defendants contend coverage exists even under this more restrictive interpretation.  Cincinnati asserts Defendants are barred from raising this argument by the "mend the hold" doctrine, estoppel, or the Federal Rules

of Civil Procedure governing discovery.[4]    As a part of this litigation,

Cincinnati sent Defendants interrogatories inquiring as to their theories of

coverage.  In response, Defendants referred Cincinnati to a June 26, 2003,

letter from defense counsel outlining Defendants' disagreement with

Cincinnati's denial of coverage.  Exhibits A-D in Support of Memorandum

in Opposition to Motion (d/e 28), Exhibit A.  Cincinnati contends the

"potential negligence" theory was never raised in the letter.  However, the

letter contains enough information to put Cincinnati on notice of this

theory.  Paragraph 1 on page 3 of the letter informs Cincinnati that the

Defendants disagree with the contention that the Powell Complaint does

---

[4]The common law doctrine of "mend the hold" takes its name from a nineteenth-century wrestling term meaning to get a better grip on one's opponent.  Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 362 (7th Cir. 1990).  The "mend the hold" doctrine limits the right of a party in a contract suit to change its position mid-litigation. Montgomery Ward and Co., Inc. v. Home Ins. Co., 753 N.E.2d 999, 1007 (Ill. App. 1st Dist. 2001).  In the insurance context, courts have invoked the doctrine to preclude insurers from denying a claim on one basis and then changing the basis for denial during litigation.  See Smith v. Union Auto. Indem. Co., 752 N.E.2d 1261, 1265 (Ill. App. 2nd Dist. 2001).  The Seventh Circuit has noted that the doctrine "appropriately configured . . . can be seen as a corollary of the duty of good faith that the law of Illinois as of other states imposes on the parties to contracts."  Harbor Ins. Co., 922 F.2d at 363.  As the Court explained, "[a] party who hokes up a phony defense to the performance of his contractual duties and then when that defense fails (at some expense to the other party) tries on another defense for size can properly be said to be acting in bad faith."  Id.  In this context, Defendants may be correct in asserting that the "mend the hold" doctrine cannot be applied to them because Cincinnati, not Defendants, is the non-performing party in this case.  However, for purposes of this Order, the Court can assume the doctrine applies because, as will be explained, Defendants sufficiently alerted Cincinnati to this theory of coverage and are not changing their position mid-litigation.

not allege negligent acts, errors, or omissions.   <u>Id</u>., Exhibit A, p. 3. Moreover, Cincinnati was given ample opportunity to respond to Defendants' theory in its Reply Memorandum in Support of Its Motion for Summary Judgment and in Opposition to Motion for Summary Judgment Filed by Cree Defendants (d/e 29) (Plaintiff's Reply) and in its Opposition to the Cree Defendants' Motion to File a Reply or Sur-Reply (d/e 34). There is no surprise or prejudice, and the Court will consider Defendants' argument on its merits.

However, as set forth below, none of the counts of the Powell Complaint allege any negligent conduct at all.  Rather, the facts alleged in the Powell Complaint are consistently characterized in terms of knowing, willful, and wanton behavior.  Because the facts alleged in the Powell Complaint are not potentially within the scope of insurance coverage, Cincinnati does not have a duty to defend the Powell lawsuit.  <u>Lapham-Hickey Steel Corp.</u>, 655 N.E.2d at 847.

B.  Retaliatory Discharge Claims (Counts V - IX)[5]

Defendants argue briefly that independent coverage exists for the retaliatory discharge claims against Henry Mitchell and Cree under the negligence standard.  Citing <u>Ziarko v. Soo Line R. Co.</u>, Defendants point out that under Illinois law "willful and wanton" conduct can be less than intentional.  <u>Ziarko</u>, 641 N.E.2d 402 (Ill. 1994).  However, a review of the actual allegations of the underlying complaint reveals that negligence is not an issue with respect to Counts V and VI, involving these two Defendants.  Powell's retaliatory discharge claims against Henry Mitchell and Cree (Counts V and VI) clearly allege more than negligent conduct; Powell contends Henry Mitchell and Cree terminated him in retaliation for his request for payment of his accrued vacation time, knowing this conduct violated public policy, and that this conduct was part of a practice and pattern of denying employees rightfully owed wages.   <u>Plaintiff's Memorandum</u>, Exhibit A, <u>Powell Complaint</u>, Count V, Count VI.  The duty to defend must be based on the allegations of the actual underlying

---

[5]Defendants do not contend independent insurance coverage exists for the Stock Sale claims alleged in Counts I - IV of the Powell lawsuit.  Any duty to defend those counts would arise only out of a duty to defend on another count.  <u>See</u> <u>Glenview</u>, 632 N.E.2d at 1042-43.

complaint, not a hypothetical version.  See DER Travel Serv., Inc., 328 F.3d

at 350-51.  Accordingly, Counts V and VI are outside the scope of potential

coverage, and no duty to defend exists.

Defendants assert coverage exists for Counts VII - IX of the Powell

Complaint, which allege retaliatory discharge claims against Ronald Lance,

Joyce Lance, and Wanda Mitchell, respectively.  Counts VII - IX do not

allege any specific conduct by the Lances or Wanda Mitchell, nor do they

indicate Powell's theory of liability with respect to these Defendants.  The

Powell Complaint contends "Cree's termination of plaintiff in retaliation for

plaintiff's request for the payment of earned and accrued vacation time was

retaliatory and in violation of the mandated public policy of the State of

Illinois . . . ." Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count

VII ¶14, Count VIII ¶14, Count IX ¶14.  Each count alleges "Cree knew

that its actions were in violation of the policy embodied in the Wage

Payment and Collection Act but disregarded that policy and terminated

plaintiff willfully and wantonly, in reckless disregard to plaintiff's rights and

well-being."  Id., Exhibit A, Powell Complaint, Count VII ¶15, Count VIII

¶15, Count IX ¶15.[6]

The Powell Complaint further asserts "Cree's actions in terminating plaintiff are part of a practice and pattern of denying employees rightfully owed wages.  During plaintiff's employment with Cree, Henry Mitchell regularly instructed plaintiff not to pay pro-rata earned vacation to departing employees."  Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count VII ¶16, Count VIII ¶16, Count IX ¶16.  Each count contains a request for damages "in an amount appropriate to punish defendant for his willful, wanton, and knowing conduct."  Id., Exhibit A, Powell Complaint, Count VII, Count VIII, Count IX.  Defendants contend the phrase "his willful, wanton, and knowing conduct" is ambiguous as contained in Counts VIII and IX based on the fact that Joyce Lance and Wanda Mitchell are females.  Cincinnati asserts these counts "can be read in only one logical way: they allege willful, wanton and knowing conduct by

---

[6]While the merits of the Powell lawsuit are not before this Court, the Illinois Supreme Court recognizes retaliatory discharge claims in two settings, situations involving the Workers' Compensation Act, 820 ILCS 305/1 et seq., and "whistleblowing" situations.  Jacobson v. Knepper & Moga, P.C., 706 N.E.2d 491, 493 (Ill. 1998).  Illinois has refused to expand the tort of retaliatory discharge to include discharge in retaliation for an employee's exercise of rights under the Wage Act or to recognize an implied civil remedy under the Wage Act for damages arising out of a retaliatory discharge.  McGrath v. CCC Information Services, Inc., 731 N.E.2d 384, 390-91 (Ill. App. 1st Dist. 2000).

each of the Director Defendants." <u>Plaintiff's Reply</u> p. 9. The Court disagrees. Construing the Powell Complaint liberally in favor of the insured, "<u>his</u> willful, wanton, and knowing conduct" could logically refer to the conduct of Henry Mitchell rather than that of Wanda Mitchell or Joyce Lance. <u>See</u> <u>Wilkin Insulation Co.</u>, 578 N.E.2d at 930.

Turning first to Count VII involving Ronald Lance, the Powell Complaint alleges Cree knew it was acting in violation of public policy when it willfully and wantonly terminated Powell in retaliation for his request to convert a portion of his earned vacation into cash. It further alleges Ronald Lance's conduct in connection with the tort was "willful, wanton, and knowing." Not a hint of negligent conduct is alleged. Because the allegations of Count VII do not potentially fall within the scope of insurance coverage, Cincinnati does not have a duty to defend Count VII. <u>See</u> <u>Lapham-Hickey Steel Corp.</u>, 655 N.E.2d at 847.

Counts VIII and IX, involving Joyce Lance and Wanda Mitchell, are similarly barren of any language suggesting negligence. However, construed in favor of the insureds, they are also barren of any allegations whatsoever regarding Joyce Lance and Wanda Mitchell's involvement in the tort. The Court must, therefore, determine whether, when liberally construed, the

18

facts alleged in these counts fall potentially within the scope of coverage. See Lapham-Hickey Steel Corp., 655 N.E.2d at 847.

The tort of retaliatory discharge requires a showing that (1) plaintiff was discharged, (2) the discharge was in retaliation for his activities, and (3) the discharge violates a clear mandate of public policy. Zimmerman v. Buchheit of Sparta, Inc., 645 N.E.2d 877, 880 (Ill. 1994). An officer or director of a corporation is generally insulated from the corporation's liabilities; however, in Illinois, a corporate officer may be held liable for his own tort and for those torts of the corporation in which he personally participated. Motsch v. Pine Roofing Co., 533 N.E.2d 1, 6 (Ill.App. 1st Dist. 1988); see also People ex rel. Madigan v. Tang, 805 N.E.2d 243, 250 (Ill.App. 1st Dist. 2004). If Powell is attempting to hold Joyce Lance and Wanda Mitchell liable as active participants in Cree's corporate tort, that conduct is not within the scope of insurance coverage. The Powell Complaint clearly alleges Powell's termination was purposeful. It asserts Cree acted knowingly and as a part of a practice and pattern of denying employees benefits. There is no allegation of negligence.

Even if the Powell Complaint could be construed to allege a claim of retaliatory discharge against Joyce Lance and Wanda Mitchell personally,

such allegations would be outside the scope of insurance coverage. Retaliation is an essential element of a retaliatory discharge claim. Zimmerman, 645 N.E.2d at 880. To prove his case against Joyce Lance and Wanda Mitchell, Powell would have to show a causal connection between his activities and the discharge. Dixon Distributing Co. v. Hanover Ins. Co., 641 N.E.2d 395, 399 (Ill. 1994). Defendants cite the Court to Dixon Distributing for the proposition that a retaliatory discharge claim does not necessarily connote malice. Dixon Distributing, however, is distinguishable from the present case. In Dixon Distributing, an insured who was being sued for retaliatory discharge filed a declaratory judgment action against its insurers. The insurance policies at issue in Dixon Distributing excluded from coverage acts performed with "actual malice." Id. at 398. The Court held actual malice was not an essential element of retaliatory discharge in Illinois. Id. at 400. Noting that "[a]n act can be done intentionally without being considered done with actual malice," the Court determined the underlying complaint lacked any express allegations of actual malice. Id. at 399. Because actual malice was not an essential element of the alleged tort or expressly alleged in the underlying complaint, the "actual malice" exclusion did not apply, and Dixon Distributing was entitled to a defense.

20

The present case, however, concerns a negligence, rather than an actual malice, standard.  Defendants cite no case in which conduct that was merely negligent was held sufficient to support a retaliatory discharge claim, and the Court's independent research uncovered none.  Because the tort of retaliatory discharge requires a showing that the discharge was in retaliation for Plaintiff's activities, Counts VIII and IX require a showing of conduct that is more than merely negligent and, therefore, necessarily fall outside the scope of insurance coverage.  There is no duty to defend Counts VIII and IX.

C.  Wage Act Counts (Counts X - XIV)

Defendants briefly argue coverage exists for the Wage Act Count against Cree (Count XI) which alleges "Defendant Cree knew that its actions were in violation of the Wage Payment and Collection Act but disregarded that statute and willfully and wantonly withheld plaintiff's earned vacation days and bonuses, in reckless disregard to plaintiff's rights and well-being."  Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count XI ¶ 18.  An examination of Count XI reveals no hint of negligent conduct.  In determining whether a duty to defend exists, the Court must consider the actual underlying complaint, not a hypothetical version.  DER

Travel Serv., Inc., 328 F.3d at 350-51.  Therefore, this count does not potentially fall within the scope of insurance coverage, and no independent duty to defend exists for Cree.

Counts XII - XIV allege Wage Act claims against the Lances and Wanda Mitchell.  Each of these counts allege "Defendant Cree knew that its actions were in violation of the Wage Payment and Collection Act but disregarded that statute and willfully and wantonly withheld plaintiff's earned vacation days and bonuses, in reckless disregard to plaintiff's rights and well-being."  Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count XIII ¶ 18, Count XIV ¶ 18; Exhibit to Memorandum in Support of Motion, Powell Complaint, Count XII ¶ 18.  The only allegations of any specific personal conduct by the Lances and Wanda Mitchell is found in paragraph 17 of each count, which alleges "defendant's failure to pay all earned vacation and compensation to a terminated employee is a violation of the Wage Payment and Collection Act, 820 ILCS 115/5."  Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count XIII ¶ 17, Count XIV ¶ 17; Exhibit to Memorandum in Support of Motion, Powell Complaint, Count XII ¶ 17.

Counts XII - XIV do not expressly indicate the theory of liability on

22

which Powell is relying.  Each count contains a request for judgment against the individual defendant to include "an award of Plaintiff's actual damages, compensatory damages and punitive damages in an amount appropriate to punish Defendant for its willful, wanton, and knowing conduct."  Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count XII, Count XIII, Count XIV.  As with the retaliatory discharge counts, Cincinnati asserts "[t]hese allegations can be read in only one logical way: they allege willful, wanton and knowing conduct by each of the Director Defendants."  Plaintiff's Reply p.9.  The Court again disagrees.  The underlying complaint must be liberally construed in favor of coverage, and all doubts and ambiguities must be resolved in the insured's favor.  Wilkin Insulation Co., 578 N.E.2d at 930. Reading the Powell Complaint liberally in favor of Defendants, "its willful, wanton, and knowing conduct" could logically refer to conduct of Cree rather than conduct of the Lances or Wanda Mitchell.

   As corporate directors, the Lances and Wanda Mitchell can be held liable for their own torts and for the torts of the corporation in which they actively participate.  Motsch, 533 N.E.2d at 6.  Section 5 of the Wage Act simply requires a plaintiff to show his employer failed to pay his final compensation by the next regularly scheduled payday after separation; it

does not require a showing that the failure was willful.  820 ILCS 115/5; Andrews v. Kowa Printing Corp., 814 N.E.2d 198, 204 (Ill. App. 4th Dist. 2004).  However, the Powell Complaint clearly alleges that Cree acted willfully, wantonly, and knowingly in violating the Act.  If Powell is attempting to hold the Lances and Wanda Mitchell liable for Cree's alleged violation of the Act as active participants in the corporate tort, that conduct is clearly outside the coverage of the policies which cover only negligent conduct.  While negligent conduct could be actionable under the Wage Act, Powell is not alleging a negligence claim.  As the Seventh Circuit made clear, "it is the actual complaint, not some hypothetical version, that must be considered."  DER Travel Serv., Inc., 328 F.3d at 350-51.

If Powell is attempting to hold the Lances and Wanda Mitchell liable for their own alleged violations of the Act, he must show that the Act applies to them individually.  By its express terms, the Wage Act applies to "employers," which it defines in pertinent part as "any individual, partnership, association, corporation, business trust . . . or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed."  820 ILCS 115/2.  In the corporate setting, section 13 of the

24

Wage Act provides "[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13.  Therefore, in order to hold the Lances and Wanda Mitchell personally liable for violations of the Wage Act without piercing the corporate veil, Powell would have to prove that they <u>knowingly</u> permitted Cree to violate the Act.  <u>See Andrews</u>, 814 N.E.2d at 205-08; <u>see also</u> <u>Stafford v. Puro</u>, 63 F.3d 1436, 1440 (7th Cir. 1995).

Mere negligence is insufficient to establish personal liability for a corporate director under the Wage Act.  Powell would not be able to establish liability under Counts XII - XIV without also proving facts showing the Defendants' conduct falls outside of the Employee Benefit Liability endorsements.  Because there is no potential for coverage under the policies, no duty to defend exists with respect to Counts XII, XIII, and XIV.  <u>See</u> <u>Illinois Emcasco Ins. Co. v. Northwestern Nat'l Casualty Co.</u>, 785 N.E.2d 905, 909-10 (Ill.App. 1st Dist. 2003) ("the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts

that show the loss falls outside the coverage of the insurance policy").

Count X contains Powell's Wage Act claim against Henry Mitchell. The parties fail to address the allegations of this count independently, but rather lump it in with the Retaliatory Discharge Counts involving Cree and Henry Mitchell and Powell's Wage Act claim against Cree. An examination of Count X reveals that this count is substantially similar to Counts XII - XIV. Count X alleges "Defendant Cree knew that its actions were in violation of the Wage Payment and Collection Act but disregarded that statute and willfully and wantonly withheld plaintiff's earned vacation days and bonuses, in reckless disregard to plaintiff's rights and well-being." Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count X ¶ 18. It also seeks damages in an amount sufficient "to punish Defendant for its willful, wanton, and knowing conduct." Id., Exhibit A, Powell Complaint, Count X. As discussed previously, construed in favor of the insured, this phrase can logically be found to reference the conduct of Cree rather than that of Henry Mitchell specifically.

Construed in favor of the insured, Count X contains two allegations of personal conduct by Henry Mitchell. First, Powell alleges "defendant's failure to pay all earned vacation and compensation to a terminated

employee is a violation of the Wage Payment and Collection Act, 820 ILCS 115/5." Plaintiff's Memorandum, Exhibit A, Powell Complaint, Count X ¶ 17.  Powell further asserts that "Plaintiff's request for payment of 82 of accrued vacation days was approved by Henry Mitchell on or about September 3, 2002." Id., Exhibit A, Powell Complaint, Count X ¶ 10. There are no allegations that Henry Mitchell acted willfully, wantonly, or knowingly in connection with Powell's Wage Act claim.  However, as discussed in connection with the Wage Act claims against the Lances and Wanda Mitchell, in order for liability to exist on Count X, Powell would have to prove facts showing Henry Mitchell's conduct falls outside the scope of the insurance coverage.  No independent duty to defend exists for Count X.  See Illinois Emcasco Ins. Co., 785 N.E.2d at 909-10.

Because no single count of the Powell lawsuit contains allegations that are even potentially within the scope of insurance coverage, the Court need not consider Defendants' assertion that the duty to defend one insured necessarily extends the duty to defend to all insureds.  Summary judgment in favor of Cincinnati is appropriate.

<u>CONCLUSION</u>

THEREFORE, Cincinnati Insurance Company's Motion for Summary Judgment (d/e 24) is GRANTED, and Defendants' Cross Motion for Summary Judgment (d/e 27) is DENIED.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:    November 15, 2004.

FOR THE COURT:

_____s/  Jeanne E. Scott_____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE